The Good morning, your honors. May it please the court. We're here on appeal of a 12B6 dismissal at a district court level, and our contention is that we have stated claims that are plausible on their face with respect to three issues. First, that the chief of police is a delegated policymaker for the city of Dallas with respect to internal police procedure. Second, that general order 609, Dallas mass arrest policy, is unconstitutional as written. And third, that the city maintained an inadequate disciplinary policy with regard to Sergeant Rudloff, which was the moving force behind the violation of our constitutional rights. I'd like to policymaker for the city of Dallas with respect to internal police procedure. Our contention is that the city of Dallas is just like the city of Wichita Falls, which is why we rely so heavily in our analysis on the Wichita Falls case. We are asking this court to apply that analysis to the city of Dallas because the city charter for both cities is virtually identical. We agree with appellee that city council is the final policymaker for the city of Dallas. Our contention is that like the city of Wichita Falls, city council has delegated policymaking authority for internal police procedure to the Dallas police chief. What do you rely on for that specific delegation from city council? We rely on the rationale in the case of Zarnow v. Wichita Falls, and it begins with looking at the city charter. In the city charter, it does maintain that the city of Dallas has executive authority through the city manager, and it has legislative authority through city council. However, they have delegated that authority to the chief of police, something that is in addition to the Wichita Falls. Where in the charter does it say that that is delegated? You say you rely on the charters. Yes, sir. We rely on Chapter 37, Article 2, Section 37 through 23 for likeness of the powers of the chief of police to those of a county sheriff, and a county sheriff is established in the state of Texas to be the final policymaker for policing in respective counties. In Chapter 37, Article 2, Section 37 through 23, it is stated the chief of police shall have like powers with the sheriff of the county to execute search warrants and other writs. There's additional language, and it also states in the prevention and suppression of crime and the arrest of offenders, he shall have the same powers as the sheriff of a county under the laws of the state. This is repeated in Chapter 37, Article 2, Section 37, 24, with regard to breaches of the peace. It is specified in the prevention and suppression of crime and the arrest of offenders, the chief of police shall have and execute like power, jurisdiction and authority as the sheriff of the county under the laws of the state. In addition, the right to draft general policies, excuse me, general orders through the police department, which are the established policies for internal police procedure, is an additional reason. Now, the reason our case is stronger, yes ma'am. So is it your position that Bolton and Grodin, which state that the final policymaker for the city of Dallas is the Dallas City Council, that there's no tension or we're not bound because you're saying that just on this one specific thing, the charter has done something that delegates and so that there's no, that you're saying that normally they would be the final policymaker, but just not here and that there's no problem with Bolton or Grodin? No. We are saying that when it comes to internal police procedure, the police chief is a delegated policymaker. We like the Grodin case because the Grodin case involves reversal of a 12b6 dismissal based on a city ordinance that allowed for arrests without probable cause. The reason Grodin is different from this case is because Grodin didn't deal with the issue of delegation because Grodin didn't have to. As is established in the Wichita Falls case, delegation can still necessitate that the entity doing the delegating retains some authority. So city council does retain some authority. Grodin deals with a city ordinance that was drafted by city council and it was also endorsed by city council through one of its representatives. As such, the plaintiff in that case filed suit against city council. So Grodin never had to deal with a situation like this one where we're talking about a general order reflecting the policymaking authority was delegated to the Dallas chief of police. Bolton? No, ma'am. That was in Zarnow versus city of Wichita Falls. No, but I'm asking about the Bolton case. Bolton case also does not deal with delegation of policymaking authority. That's what makes it different from the case at hand. Now, what's notable in the Wichita Falls case is that it was determined that the city council also impliedly delegated policymaking authority to the chief of police because the chief of police was allowed to draft general orders. However, Wichita Falls didn't actually deal with a general order. It dealt with the application of a specific plain view policy when conducting search warrants. Here, yes, your honor. Go ahead. I didn't finish your thought. Yes, ma'am. Here, we actually have a general order that was drafted by the chief of police. Also what distinguishes it from the Wichita Falls case, in the Wichita Falls case, it was determined that if a public statement was going to be made about the plain view doctrine for the city of Wichita Falls, the police chief would be the one to do it. Here, not only do we actually have a general order at hand, but we also have the police chief making public statements about the general order, how she drafted it, and how it was being applied. Can you help us with the second argument you were going to make about the unconstitutional as written? What's unconstitutional about this policy as written? As written, it allows for an individual to be arrested on the mere say-so of a supervisor instead of requiring probable cause for individual arrests. Well, doesn't the, don't you read, wouldn't you say that it would have to be, the supervisor would know that you need probable cause, and so the supervisor wouldn't give it if they didn't have probable cause. This is like, isn't this like the Edwards versus City of Wichita case? It's actually unconstitutional just because it leaves out detailed guidance that might have averted a constitutional violation. You don't have to tell everything in your policy because you assume that the officers are going to constitutionally apply all the other things that they know. And the distinction between this case and the Bulk Springs case is that the policy in the Bulk Springs case said, do the right thing when it comes to using deadly force. The plaintiffs came back and argued, well, there are some circumstances where it says do the right thing, but allows for subjective analysis. It did not allow for unconstitutional conduct on behalf of the officers as the policy was written. The policy in this case does. It allows for people to be arrested on a supervisor's approval without probable cause. It doesn't say the supervisor can give their approval without probable cause, does it? It's silent as to it. So you assume the supervisor who's been trained, their arrest needs probable cause, is going to give the approval once there is probable cause. You read in the, you don't assume that unless it says you can make an arrest absent probable cause, it's not saying that, is it? It's silent. Let me clarify my position, Your Honor. It's a mass arrest policy. That's how it's referred to. It does not require individualized probable cause as the Supreme Court requires under IBARRA. IBARRA requires that you have probable cause for every individual being arrested. This policy as written allows for mass arrests without individual findings of probable cause for each person being arrested. Where does it say you don't need probable cause? It doesn't specifically state you don't need probable cause. Then why are you reading that into the policy? Because it's referred to as a mass arrest procedure, and we have the officers discussing how it is being used, and they discuss that it is being used by drafting what are referred to as chain reports that are used to arrest mass groups of people without individual findings of probable cause for each individual being arrested. Well, the, so you're not assuming that the supervisor's going to behave constitutionally? We're going by what the office- That permission whenever, I mean, a bunch of people that there's probable cause for a walkway or a field or the road. I know there's some dispute in this case of where, if they were on the field or the road, but- There's dispute in this case about where our clients were located. There's also dispute within the police department about what they were arrested for, and that's part of the result that this procedure allowed for when you don't require individualized probable cause before you arrest someone. The police department itself has said at times that our clients were arrested for riot participation. It's said at other times that the same individuals under the same set of facts were arrested for obstruction of a roadway. Part of the problem is the supervisor providing approval is not on the scene to have knowledge of what's going on. They're simply approving mass arrests with no assessment of individualized probable cause for each person being arrested. Well, if all the people are in the same place that they're not supposed to be, then why isn't there a probable cause determination can be made in the aggregate for all the people who are doing the exact same thing? If that were the case, that is theoretically possible, but it didn't happen the way that this policy was employed as represented by the police officers who are making the arrests. That's why we refer to their statements in our complaint. So you believe that there's something in the complaint that says that these arrests are being made without the supervisor knowing that there's probable cause? There's no statement by the officer that a supervisor has made probable cause, and I want to make sure that I'm being specific because I don't want to misrepresent what's in our complaint. The officers say we're doing these chain reports. One of the officers also says that because of something that one person did, they are arresting everyone with full knowledge that the magistrate might, quote, just drop it. And for these reasons, we're saying that because it doesn't require individualized showings of probable cause, you are mass arresting people for public demonstrations, and it allows the police to do so if they disagree with the public demonstration. So, are you saying that it's against the law to arrest people that are all standing and blocking a road? We're saying it's against the law to arrest a group of people when some of them are simply being charged because they were in close proximity to individuals that the police believe they had a probable cause basis for arresting. Right. I'm asking, wouldn't there be probable cause if you're blocking a road or blocking ingress and egress or trespassing on property you're not supposed to be on? Yes, that would be true, Your Honor. However, you'd have probable cause in that instant for every individual who was standing in the road, and that wasn't the case here. That's not how the policy is written, and that's not how it was employed. What is this chain thing that you keep referring to? That was one of the statements that was made by one of the officers. What does that mean? It means, as he explains it is, that they were writing one report for one individual and using that report as a basis for arresting an entire group of people who were in a particular area. Can't they say, like so and so, this person was also there? Like so and so, this person was also there? Like so and so, and then that's, is that somehow constitutionally problematic? If that were true for each individual, but it wasn't as this policy was written and used. Well, and I guess, because it sounds like we're just going back and forth with this, but I think we can agree, an individual arrest could be unconstitutional as without probable cause, but what you're talking about is the policy being facially unconstitutional, and I guess what I'm saying is, I could agree with you that an individual arrest may be without probable cause and unconstitutional, but I could agree with Judge Elrod that this is facially unconstitutional. Yes, sir, and the only challenge I would offer is that when you refer to it as a mass arrest policy, the policy does not require individualized findings of probable cause for each individual being arrested. It doesn't require it, but it doesn't prohibit it. It does not prohibit it, no. Yes, sir? Can you talk about, it doesn't seem like that there is a widespread practice that would be on the Monell that you need a bunch of incidents and that sort of thing. And you're moving now to my third point regarding Sergeant Rudloff. Yes, we only have a minute, so I thought we should. Yes, Your Honor, thank you, and I would cite to the case of Jackson v. Valdez, there's no rigid rule requiring numerosity to prove a widespread pattern, but we do contend that 18, excuse me, 19 documented reports of police misconduct, particularly involving excessive force under these circumstances, is sufficient to establish a widespread pattern, especially when five of those incidents did result in discipline against this officer. The city knew that, and as a result, it created a highly, he had a demonstrated track record of violating people's constitutional rights in a manner that made the outcome, the violation of our client's constitutional rights, a highly predictable consequence of him supervising officers in the context of people protesting after the murder of George Floyd. All right. If there are no, yes, sir. Yes, thank you, Mr. Henderson, and you've saved time for a vote. Yes, sir. Thank you, Your Honor. All right, Mr. Ligon, and if I've mispronounced that, you please correct me. Thank you, Your Honor. It's pronounced Ligon, but . . . Ligon, all right, Mr. Ligon, thank you. No worries. I'd like to focus my time on the delegation issue and hopefully have time to get to the unconstitutional policy and the issue of whether or not there was a policy of failure to discipline. Appellants rely heavily on the Zernow case, and the charters have arguably similar language and dissimilar language, but Zernow was not a statutory interpretation case. Zernow was a case where, first of all, this court said, as it noted in Grodin, being a final decision maker is not the same thing as being a policymaker. In Grodin, this court said, you have to have more. The more in Zernow was that the City Council of Wichita Falls had no involvement with the Wichita Falls Police Department. In fact, the court noted that there was no evidence that the City Council of Wichita Falls had ever even commented authoritatively on internal police matters. There is no allegation in the complaint that there is such a similar instance of absentee landlordism with the Dallas City Council. So that's number one. Number two, the complaint actually takes it another step away from Zernow when it notes in paragraphs 107 and 108 that the City Council set up an Office of Community Police Oversight. This is a board that provides monitoring of internal Dallas police procedures, investigations, discipline. It has its own authority to actually subpoena records, to take sworn testimony, and according to Chapter 37 of the City Code, it even is listed as an advisory board for the City Council. So the complaint itself states that the City Council has actually taken affirmative steps to monitor internal procedure of the police. So the Zernow case . . . But this looks like Zernow in terms of having a general grant of authority in the city charter, doesn't it? I'm sorry. General grant of authority in a city charter, isn't that what happened in Zernow? The Zernow grant of authority was of the . . . the city charter said that the police had immediate control and direction of the department. That's correct. The charter, however, did not say that it was delegating its policymaking authority. And if you look at the Zernow opinion, in no place does this court say the charter is the issue. I think of this principally as an implied delegation case. And it's similar to workplace rules, employment cases, or even failure to train or failure to discipline cases. You can have all the rules you want, but what's actually happening? What is going on in practice? In Wichita Falls, the practice was the city council didn't have any involvement. That's not what's alleged here. Instead, what's alleged is something more affirmative. I'd like to touch on the Chapter 37 issue about the sheriff. The appellants do not cite any case law that says if a city uses the word sheriff somewhere in a code, that means they have delegated their policymaking authority over their police department. In fact, Chapter 37 itself sets numerous critical policies, including 37.5 directs officers when they can arrest people without a warrant. 37.7 directs that any suspect arrested without a warrant shall be brought forthwith to a magistrate and on and on and on. Chapter 37 directs certain policies within the police department because the Dallas City Council has not delegated policymaking authority. But Mr. Henderson refers us to 37.23, which says that the police chief, quoting, shall have the same powers as the sheriff of a county under the laws of the state. Are we to read that out in light of what you just told us about the other provisions in the Charter? What meaning do we give to those words in 37.23? I think statutory interpretation cannot be done in a vacuum. The appellants have cherry-picked a handful of phrases of a rather long chapter of the City of Dallas City Council explaining what its police department is and is not supposed to do. Using the actual chapter itself and the Section 37.24 that Council referenced, it gives the police department sheriff powers, this is the second place we've mentioned sheriff powers, over bar rooms, ballrooms, drinking houses, theaters, and other places or buildings of public resort. If the previous section had granted plenary policymaking authority, then why would the City Council also need to give the police chief power to close bar rooms and drinking establishments? So simply reading a handful of phrases or a few words in a broader statute is not how statutory interpretation is supposed to be done. Briefly, if I could touch on... What do you think that phrase about the powers, all the powers the sheriff means, then, if it doesn't mean... You're saying it doesn't mean what it says because it's limited later. I'm saying it doesn't mean what... There's no evidence that that was specifically meant to say everything else that we've done can go away because all the other powers that we've retained are all advocated based on this one sentence in one section. What power has it retained regarding policies that the people within the Sheriff's Department use? What specific reservations of right are there with the City Council? The fact that they have some kind of office that can review problems in the community doesn't mean that they're reviewing every policy that they're promulgating, does it? It does not mean that they're reviewing every single policy. If you look at Chapter 37 and the whole, it reserves for the City Council powers to say this is how you are going to do police work. For example, Section 3712 directs that officers who have been fired by a police chief who's later dismissed, those officers get rehired. They are automatically reinstated. Chapter 3727 directs the city police chief to take all funds that he or she collects and deposit them into city accounts. Section 3730 directs the chief of police that he, this is critical, that he or she shall have no right to allow a prisoner free until he or she has paid their fines and their court costs. 3730 says if a police chief does so, his pay will be docked. The money that was supposedly lost, that has to come out of the chief's pockets. So an isolated phrase, read out of context, and how legislators draft things at different times meaning different things, there's no, to my knowledge, legislative history that would explain why they picked that specific word and whether they meant that in context of policymaking power versus the power to, as the statute says, arrest, to imprison, and so forth. So read in context of 37, what would have to be required of reading that one statement, that one word in one section is the Dallas Police Department, under the noses of all of us apparently, has delegated its policymaking power over one-third of its workforce, over around $650 million, 3,200 workers, and the policing of the city of Dallas. And that they did so with one word in a perhaps poorly drafted chapter. But the key here is, is that an express delegation of policymaking authority? And read in isolation, I think the answer is no. Briefly, on the issue of the unconstitutional written policy, this would be a very different circumstance if the city council had promulgated an arrest, mass arrest code, mass arrest general order that said, in mass arrest situations, in civil unrest, Fourth Amendment, probable cause, reasonable suspicion, that's out the window. You guys do what you gotta do, the leash is off. Instead, appellants have to read that by inference, that because there is no specific instruction, in fact what the complaint says in paragraph 92, DPD General Order 609 fails to include a requirement. There's no case law that says that every single regulation, order, workplace rule has to include the entirety of the Bill of Rights. General Order 609 does not mention the Second Amendment either. That doesn't mean that the city of Dallas authorized its officers to take people's weapons. Instead, the argument is, it is unconstitutional on its face by inference, that somehow, not specifically including this in one general order, was a, was the final word of the city. Going back to your first argument really quick, do you believe that we are bound by any prior pronouncements of our court that would say, that dictate the answer to this case? Are we, are we bound by the rule of orderliness that such and such case would say that, and I think you would have led with that, had you believed that, but . . . I believe, I believe that it is undeniable that Bolton and Grodin said the city council is the policymaker for the city of Dallas. I am not sure that, based on my research, anyone has ever attempted the novel argument of finding the word sheriff in the city code and said, that's, all that doesn't mean anything, and somehow the city council, which is quite well aware of Bolton and Grodin, has not since clarified that at all to comport with the Fifth Circuit's, this court's rules. So lastly, on the matter of discipline, monoliability almost always requires a pattern of practice. There is, in the complaint, no pattern of practice. There is one officer among 32, 3300 who had complaints and then five instances of discipline. Complaints in and of themselves are not findings of constitutional violations. The Fifth Circuit has not had a hard rule on numerosity, but I think the, the cases that you look at, for example, in the Fort Worth case, 27 instances of false arrest over a period of four years was not considered to be a pattern. 11 over a period of four years is not considered a pattern. If we have one person in this large police department whose actions can bind the city to liability, then that is by definition responding as superior. But here you have 19 allegations of misconduct, 16 involving the use of force.  Because, two reasons for that, Your Honor, number one, an allegation, again, is not proof of any sort of constitutional violation. Anybody can make an allegation. It takes a simple form that you file with IAD. And if allegations are sufficient, then a city such as Dallas could have an otherwise pristine record of management, of training, of oversight, and of discipline. But if 20 people say a bad thing happened, then all of that goes away, now all of a sudden the city has potential Mon-El liability. The appellants point to five instances of discipline. I think that's closer to evidence, but that's not necessarily evidence of a constitutional violation. Officers get rung up on, on violations of workplace rules all the time. So, five is not enough for Mon-El liability. The appellant's site, certainly no case law for that effect. Lastly. We don't have any case law that says five isn't enough. Um, I, I, I think that the, I'm struggling with the name of the case at the, at the moment, but, um, a 2009 Fort Worth case found that 27 over, actions over a period of six, seven years was not sufficient. Um, I, I've certainly not found any case law that says five is enough in, in a city the size of Dallas. Um. So, what did the city do regarding the policy? I mean, I guess that's an issue for summary judgment, not for 12B, but is the city, did the city involve itself in any way in this policy, and did the city involve itself in  The city council, Your Honor? Um, the city council was provided an after-action report, uh, where the Dallas Police Department chief explained that there were certain problems that she saw at the time. Um, as it relates to specifics about what they did, I, I, I can't represent one way or another right now, uh, but the rule 609 I can represent was withdrawn. It's no longer on the book. But are you saying that the, the, the sheriff, the, the, the police officers can make a policy but they're not final policy makers even if they make the policy, and that they make policies all the time, but they're not, still cannot be held responsible as final policy makers? No, Your Honor. We would say that the, uh, Dallas police chief has decision-making power and can promulgate general workplace rules. She cannot promulgate policies of the city as, as mean, as for purposes of Mon-El. What if she says we're going to, you know, we think that petty crime leads to big crime and we're going to go after everyone who's doing vandalism, um, and we're going to prioritize that and put people on the street, um, we're going to allocate our resources on the street for that. Um, is that a policy or is that not a policy? I, I think that that would be under what is termed a policy, um, a policy is the ability to, uh, set goals and means. Um, officer, or police chiefs have responsibility and powers to make decisions about allocation of resources. I think that would fall. I'd like to say a goal is to eliminate, uh, inner city crime and we think the way to do that is to stop on any misdemeanor we're going to go after, you know, like the old New York model or something. Broken windows model. Yes. Um, I, I would, Your Honor. Would that be a policy of the, of the police chief? That would not be a policy of the city of Dallas. That would be a decision of allocation of resources by the, uh, decision maker. It looks like it's a policy and so what if you said we think that these riots, these, these demonstrations, these protests, these first amendment rights folks who are expressing their first amendment rights, uh, we've seen this get out of hand and we want to, so the instant they violate the law, we're going to arrest them because we don't want to have a, a, we don't want to have any kind of burnings and things like that. Would that be a policy? Is that, is that, and is that what this was? It took, from their point of view, I'm not saying that's a legitimate, right? As I guess I'm having a hard time. This used to lead with this decision maker, policy maker, and I don't know exactly where the line, cause you, and you're the one who articulated it, so it seems like you should tell us where the line is. Um, Judge Elrod, that is a, a great question and there is, in the case law, there's absolutely no line that you can say, well, at this point someone has, has lurched over into policy maker. Um, I think the, the Zernow example would be, uh, appropriate here of where you're making decisions without any involvement or, or from the, what they agree is the final policy maker. So it, it is on them to plead facts that say somehow, not that she's making decisions and she can make decisions on her own, that doesn't transmogrify her into being a policy maker. The city council has to either delegate her that responsibility through, uh, uh, express delegation or through, as in the case of Zernow, implied delegation. And that was not, that's not present here. Um, and my time is up, but I would ask that the Court affirm the dismissal. Thank you. All right. Thank you, Mr. Ligon. All right. For the county, I'm going to let you pronounce your name because I'm sure to mess it up. Good morning, Your Honors.  My name is Pete Ligon.    I represent the district court's jury in favor of the Zernow case. I'm here in support of the Zernow case. I will be exceedingly brief. As stated in the appellee's brief, the, the appellants have not in any way raised a point of error as to the judgment entered in favor of my clients. They have not briefed it. They have not even in their reply brief, uh, responded to my brief saying that they hadn't briefed it. Accordingly, unless the court has a question of me, I'm going to simply ask the court to share his office and yield the remainder of my time. All right. Thank you, Mr. Shouhet. Thank you, Your Honor. Mr. Henderson for rebuttal. May it please the court. I'd like to revisit the issue of delegated policymaking authority because one critical distinction has to be kept in mind from the beginning and that is the policymaking authority we are talking about relates to internal police procedure. In this, in this regard, this court did establish where the line is between decision-making authority and policymaking authority. And this court determined that the ability to draft general orders alone is, is sufficient to establish implied policymaking authority from city council to the chief of police. Are you talking about Zernow? Yes, sir. Zernow, which I think of as the Wichita Falls case. And the reason that's important is because in that case, a general order wasn't even at stake. This court determined the ability to draft general orders in and of itself implies that policymaking authority has been delegated with respect to internal police procedures. Here we actually have the chief of police drafting a general order and then speaking about it publicly. In addition to that, we're pointing out what's included in the city ordinance because Dallas City Council went further to establish that we also want to make it clear that in at least two sections of those ordinances, they established that the chief of police is supposed to have powers that are on par with the county sheriff. But I'm using that to make it clear that given where we are in these proceedings, given those facts, we have pled causes of action that are plausible on their face based on the fact that the chief of police is a delegated policymaker for internal police procedures in the city of Dallas. Also in Zernow, because opposing council noted that there is, for example, a police oversight committee that's recognized in Zernow, quoting specifically from the case, although the city offered evidence that the city council periodically authorized the creation of various police task forces, those resolutions have little to do with police policy. So again, the authority delegated here has to do with internal police procedure. Mr. Henderson, it's a little unclear to me as regards your claims, which ones you intend to pursue in the district court and then whether or not there was something that you were abandoning. Could you offer some clarification? Yes, sir. The claims we intend to pursue are against the individual officers who violated our client's constitutional rights and also with regard to the city as it relates to police policies that directly led to their constitutional violations, including General Order 609. And to that extent, something I need to clarify about 609, because we focus primarily on probable cause as it relates to that general order, we did also plead, and it's supported by the evidence, not the evidence, but the statements that we include in our complaint, that that order is also used to quell what's perceived by the police force as civil unrest. So in this regard, we have pled that General Order 609 allows the police to arrest people when they haven't even committed a crime, let alone one that's supported by individual findings of probable cause. That's how we've pled it in our complaint, that when it is perceived that there is some degree of civil unrest, the police can use General Order 609 to engage in mass arrests. And as evidence of that, we refer the court back to statements by the officers in our complaint that refer to chain reports that are being used to arrest protesters based on them being in a vicinity, in a particular area, and the police associating them as being connected with the protest activities. Your Honor, that's everything I have to cover unless there are additional questions for me. All right. Thank you, Mr. Henderson. Yes, Your Honor. Your case is under submission, and the court will